# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **JOSHUA M. STROUT,** )<br>)<br>**Plaintiff** )<br>)<br>**v.** )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant** ) | **Civil No. 08-181-B-W** |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from degenerative disc disease, headaches, depression, anxiety, and back and leg pain, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

This case returns to this court following an August 2006 judgment and order granting the commissioner's unopposed motion to vacate an earlier decision adverse to the plaintiff and remand this case for further proceedings. *See* Record at 592-94. After remand, the case was assigned to the same administrative law judge, *compare id*. at 13-25 *with id*. at 541-50, who

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on January 16, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

convened three additional hearings before issuing the adverse decision that the plaintiff now appeals, *see id*. at 541-50, 778, 805, 849.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from severe impairments of degenerative disc disease and headaches, Finding 3, Record at 544; retained the residual functional capacity ("RFC") to perform light work except that he could occasionally climb, stoop, and crouch, could frequently balance, kneel, and crawl, and needed to avoid concentrated exposure to vibratory equipment and hazards such as moving machinery and unprotected heights, Finding 5, *id*. at 545; that, considering his age (33), education (at least high school), work experience (no transferable skills), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 548-49; and that he therefore had not been under a disability at any time from his alleged onset date of January 31, 2002, through the date of decision, October 23, 2007, Finding 11, *id*. at 549-50.[2]   The Appeals Council declined to review the decision, *id*. at 531-33, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

---

[2] For SSD purposes, the plaintiff had acquired sufficient quarters of coverage to remain insured only through March 31, 2002.  *See* Finding 1, Record at 543.

adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff seeks reversal of the second adverse decision and remand for further proceedings on grounds that the administrative law judge (i) failed to recuse himself following his allegedly extrajudicial observation of the plaintiff engaging in conduct inconsistent with that described in his hearing testimony, (ii) erred in relying on cursory and outdated RFC opinions by Disability Determination Services ("DDS") non-examining consultants, and (iii) erred in rejecting RFC opinions of two treating sources without supplying good reasons for doing so. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10) at 2-28. I recommend that the court find no reversible error.

## I.  Discussion

### A.  Failure To Recuse

#### 1.  Factual Background

Prior to issuing his first adverse decision, the administrative law judge presided at an April 15, 2004, hearing at which the plaintiff appeared with a non-attorney representative. *See* Record at 37. The plaintiff, who was in a wheelchair, testified, *inter alia*, that (i) he had no

feeling from the waist down, needed assistance to walk, and was very uncomfortable sitting, *see id*. at 46, (ii) the wheelchair had been prescribed for him by a treating physician, Dr. Bert Beverly, the prior week, *see id*. at 43, (iii) he had last driven a car two years earlier, when he had to take his daughter to the hospital, *see id*. at 47, and (iv) he had not worked since January 31, 2002, *see id*. at 40.

On June 29, 2004, the administrative law judge convened a supplemental hearing at which the plaintiff again appeared with the same non-attorney representative. *See id*. at 26.  The administrative law judge explained:

> At the conclusion of the [April 15, 2004] hearing, as it happened, I happened to be looking out the window, and I saw [the plaintiff] get into a pickup truck and drive off.  And in that pickup truck there [were] all kinds of what appeared to be building supplies or remnants of building supplies.  And we're here today for, one, to give notice to [the plaintiff] as to my observations and two, to hear what objections he may have for me to decide this case.  If – you know, where a Judge becomes a [INAUDIBLE] witness to events outside of the hearing, that does raise a question, but I don't know, frankly, what limitations I have and I'll entertain any argument that you'd like to raise at this time.

*Id*. at 28-29.  Following some discussion, the plaintiff's non-attorney representative objected to the administrative law judge's deciding the case, expressing concern that the extrajudicial observations would be taken into consideration.  *See id*. at 32.  The administrative law judge provisionally overruled the objection on the basis that the plaintiff's due process rights would not be transgressed because, as a result of "the inquisitorial function of an Administrative Law Judge[,]" the plaintiff would be afforded the opportunity to explain himself.  *See id*. at 32-33.  However, the administrative law judge noted that he would do some further research, including reviewing the commissioner's Hearings, Appeals and Litigation Law Manual ("Hallex"), and take whatever action might be appropriate.  *See id*. at 33.

The administrative law judge then proceeded to question the plaintiff, who testified that his girlfriend had placed him on the driver's side of the truck because someone had parked too close to the passenger side, that she had moved him into the passenger's seat, and that she had driven the truck.  *See id*. at 33-34.  The plaintiff added that there was nothing in the back of the truck apart from "a little bit of crushed rock and a couple of bricks left over from winter."  *Id*. at 34.  The administrative law judge replied: "Well, actually, I saw you drive the car.  I saw you drive that Ford truck."  *Id*.  The plaintiff responded: "I wasn't driving."  *Id*.  The administrative law judge asked the plaintiff's representative, "What do you say to that, Counsel?"  *Id*.  The representative responded:

> Your Honor, all I can say is that I didn't observe it.  All I can go on is his testimony that he wasn't driving the vehicle.  I just have to go by what he's saying because I didn't see him after we left the hearing.  All I can go by is – or what you can decide is based on his testimony.

*Id*.

In his first adverse decision, the administrative law judge explained that he found the plaintiff's statements concerning his impairments and their impact on his ability to work "not entirely credible in light of his failure to follow recommended treatment or referrals to medical specialists, indications of drug abuse, his incarceration for possession of stolen goods, his poor work record, the many inconsistencies in his allegations, the reports of the treating and examining practitioners, and the medical history."  *Id*. at 21.  He devoted a page-and-a-half, single-spaced, to cataloguing inconsistencies, including (i) the inconsistency between the plaintiff's April 15, 2004, hearing testimony that he had not driven for two years and the administrative law judge's parking-lot observations, and (ii) the inconsistency between those observations and the plaintiff's explanation that his girlfriend had placed him on the driver's side, had moved him over, and had herself driven the truck.  *See id*. at 17.

5

After issuance of the first adverse decision, the plaintiff obtained his current counsel, an experienced Social Security practitioner, who filed a statement of errors seeking reversal and remand on the basis, *inter alia*, that the administrative law judge had failed to recuse himself following the parking-lot observations, justifying reversal and remand to a different administrative law judge. *See* Plaintiff's Itemized Statement of Specific Errors (Docket No. 12), *Strout v. Barnhart*, Civil No. 05-166-B-W (D. Me.), at 2-3, 8. The commissioner's motion for remand, to which the plaintiff consented, did not address the recusal/bias argument, directing merely that "[u]pon remand, the matter will be returned to an ALJ" for reevaluation of several specified issues. *See* Record at 595-97.

Following remand, the plaintiff's counsel requested in writing on at least two occasions that the administrative law judge recuse himself in view of his status as a potential witness in the case. *See id*. at 668, 677-78. At two of the plaintiff's three post-remand hearings, the administrative law judge addressed and declined the recusal request. At the first post-remand hearing, held on January 22, 2007, he stated:

> I don't believe that there is any allegation that I violated any of the Hal[l]ex Provision[s], in fact, . . . consistent with Hal[l]ex the claimant was afforded an opportunity to testify under – as to what observations I made, and I believe that I met my duties consistent with the Hal[l]ex requirement, and consistent with the duties of an independent adjudicator.

*Id*. at 781. At the second hearing, held on April 2, 2007, he explained: "Just for the record, I have previously spoken to the Chief Judge of the office who in turn I, I do not believe, and they do not believe that [it is] necessary for me to recuse myself. There was a supplemental hearing consistent with – regarding my observations and the claimant attended[.]" *Id*. at 807-08. At that hearing, the administrative law judge again questioned the plaintiff regarding his April 15, 2004, parking-lot observations, stating: "I told you that I saw you take your wheelchair and throw it to

6

the back of your pick-up truck where there [were] building supplies and I saw you drive away." *Id*. at 820.  The plaintiff denied that he had done so.  *See id*.

The instant adverse decision contains no mention of the administrative law judge's April 15, 2004, parking-lot observations.  *See id*. at 541-50.

## 2.  Analysis

The commissioner's regulations provide, in relevant part: "An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision."  20 C.F.R. §§ 404.940, 416.1440.  The Hallex elaborates:

> The Administrative Law Judge (ALJ) **must** disqualify or recuse himself or herself from adjudicating a case if the ALJ is prejudiced or partial with respect to the claimant or has any interest in the matter pending for decision.
>
> The ALJ **may** disqualify himself or herself from adjudicating a case if the ALJ believes his or her participation in the case would give an appearance of impropriety.  However, disqualification is not a matter of personal preference or reluctance to handle a particular case.  The ALJ must have reasonable and proper grounds for such action.  For example, the ALJ may withdraw from the case if:
>
> ● The ALJ shares an acquaintance with, but does not know, the claimant; or
>
> ● The ALJ has particular knowledge about the claimant from an extrajudicial source.

Hallex § I-2-1-60(A), 1993 WL 642979 (emphasis in original).[3]

---

[3] As the plaintiff observes, *see* Statement of Errors at 7,  judges in other settings, including federal judges, Maine state court judges, and United States Department of Labor administrative law judges, are prohibited from testifying as witnesses at hearings over which they preside, *see* Fed. R. Evid. 605; Me. R. Evid. 605; 29 C.F.R. § 18.605.  The commissioner has adopted no such rule.  In any event, even violations of Federal Rule of Evidence 605 do not necessarily require recusal.  *See, e.g., United States v. Berber-Tinoco*, 510 F.3d 1083, 1092 (9th Cir. 2007) ("Berber claims that a judge's interjections in violation of Rule 605 destroy the court's image of impartiality and thus violate a defendant's constitutional right to an unbiased trial judge.  However, as we recently noted, the Supreme Court has required recusal due to an appearance of bias (as opposed to actual bias) only when a judge: (i) has a direct, personal, substantial pecuniary interest in the outcome; (ii) becomes embroiled in a running, bitter controversy with a party; or (iii) participates as part of the accusatory process.  Rule 605 violations will rarely rise to this level.") (citation and internal quotation marks omitted).

At oral argument, the plaintiff's counsel suggested that this was a "mandatory recusal" case, that is, one in which the administrative law judge was actually prejudiced against his client. *See, e.g., Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003) ("This regulation [20 C.F.R. § 404.940] mentions only actual prejudice; nothing in this regulation mandates recusal for the mere appearance of impropriety. On this basis, this court holds that actual bias must be shown to disqualify an administrative law judge."); *Orellana v. Astrue*, No. 1:06-cv-1166 OWW TAG, 2008 WL 398834, at *10 (E.D. Cal. Feb. 12, 2008) (rec. dec., *aff'd* Mar. 11, 2008) ("[U]nlike federal judicial officers, ALJs are not held to the standard of avoiding the appearance of impropriety. Thus, the Claimant must show actual bias on the part of the ALJ.") (citations omitted).

Actual bias on the part of an administrative law judge is *per se* reversible error, regardless of the underlying merits of the case. *See, e.g., Hummel v. Heckler*, 736 F.2d 91, 95 (3d Cir. 1984) ("In the event that a finding of bias is made on remand, a new hearing must be held before an administrative law judge to determine the merits of Hummel's claim."); *King ex rel. S.K. v. Commissioner of Soc. Sec.*, No. 6:07-cv-537-Orl-22 DAB, 2008 WL 4095493, at *2 (M.D. Fla. Aug. 29, 2008) ("A claimant is entitled to have the evidence evaluated by an unbiased adjudicator, even if the Commissioner's decision is supported by substantial evidence in the record."); *Pastrana v. Chater*, 917 F. Supp. 103, 106-07 (D.P.R. 1996) ("[T]he Magistrate's approach to this case – a conventional 'supported by substantial evidence' review – essentially amounted to treating the ALJ's bias as 'harmless error.' However, even if the record was entirely devoid of any evidence which might support a finding of disability, there is good reason not to apply a 'harmless error' standard to claims of ALJ bias. SSA ALJs wear the 'dual hats' of investigator *and* adjudicator. An ALJ has an affirmative obligation to assist the claimant in

developing the facts of his or her claim, but must also critically assess that claim, as well as decide it.  It is difficult to conceive of how a judge biased against disability claims or claimants could conscientiously perform those multiple duties.") (citations and internal punctuation omitted) (emphasis in original).[4]

At oral argument, the plaintiff's counsel pointed to no specific comment or other record citation betraying the administrative law judge's asserted bias.  Rather, he argued, the administrative law judge necessarily lost his ability to render an impartial decision when he allegedly observed conduct fundamentally inconsistent with the plaintiff's claim, followed by an "inquisition" in which the plaintiff, without benefit of an opportunity to cross-examine the administrative law judge *cum* witness, denied the truth of the adjudicator's alleged observations.  As a result, the plaintiff's counsel reasoned, the administrative law judge was in a position to believe firmly that the plaintiff not only was an "artful dodger," manipulating the facts of the case, but also a perjurer.  Counsel added that, while the administrative law judge "sanitized" the decision under review to omit reference to the parking-lot incident, he clearly had not forgotten it.  The administrative law judge not only explicitly mentioned the incident in his initial decision but also brought it up again in one of the plaintiff's hearings following remand.

This is an unusual case, and the plaintiff's counsel's argument is not without force.  Nonetheless, the hurdle to rebutting the presumption of an adjudicator's impartiality is high.  *See, e.g., Keith v. Barnhart,* 473 F.3d 782, 788 (7th Cir. 2007) ("[W]e begin with the

---

[4] While the plaintiff frames his point of error as one of failure to recuse rather than transgression of his procedural due process rights, the analysis is the same with respect to whether actual bias is a *per se* reversible error.  *See, e.g., Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996) ("The impartiality of the ALJ is . . . integral to the integrity of the system.  Trial before an unbiased judge is essential to due process.") (citation and internal quotation marks omitted); *Grant v. Commissioner*, 111 F. Supp.2d 556, 566 (M.D. Pa. 2000) ("In evaluating the Plaintiffs' due process claims, it is necessary to apply a standard which focuses on whether the procedures employed by ALJ Rowell at the Plaintiffs' administrative hearings were fair.  The fairness of those procedures involves matters which are completely independent of the results of those proceedings.").

presumption that the hearing officer is unbiased. . . .  It is only after a petitioner has demonstrated

that the decisionmaker displayed deep-seated and unequivocal antagonism that would render fair

judgment impossible that the presumption is rebutted, the findings set aside, and the matter

remanded for a new hearing.") (citation and internal quotation marks omitted); *Bronson v.*

*Barnhart*, 56 Fed. Appx. 793, 793 (9th Cir. 2003) ("[A] claimant may rebut the presumption that

an ALJ is unbiased if he shows that the ALJ's behavior, in the context of the whole case, was so

extreme as to display clear inability to render fair judgment.") (citation and internal quotation

marks omitted); *L.C. v. Utah State Bd. of Educ.,* 188 F.Supp.2d 1330, 1338 (D. Utah 2002),

*aff'd*, 125 Fed. Appx. 252 (10th Cir. 2005) ("[A] substantial showing of personal bias is required

to disqualify a hearing officer or tribunal in order to obtain a ruling that the hearing is unfair.

Tribunals enjoy a presumption that they are not biased unless it is substantially demonstrated that

they are actually biased with respect to factual issues being adjudicated.") (citations and internal

quotation marks omitted).  In my view, the plaintiff fails to surmount this hurdle.

The plaintiff points to no comment in the Record betraying bias on the part of the

administrative law judge.  Indeed, the administrative law judge expressly disclaimed any such

partiality.  *See, e.g.*, Record at 781.[5]  In addition, the administrative law judge supplied

numerous reasons besides the parking-lot observations for the negative credibility finding in his

first decision, *see id.* at 17-18, 21, and did not even expressly rely on them in making a negative

---

[5] In contrast, in cases cited by the plaintiff in support of his recusal argument, bias on the part of the administrative law judge was clear from the face of the Record.  *See* Statement of Errors at 6 (citing *Miles*, 84 F.3d 1397, and *Hendricks v. Sullivan*, No. 90-0709-CV-W-3, 1992 WL 120383 (W.D. Mo. Feb. 12, 1992)).  In *Miles*, the court vacated an administrative law judge's decision and remanded it for unbiased reconsideration before a different administrative law judge after the administrative law judge rejected an opinion of the claimant's medical expert based on the observation that the expert's examinations for the claimant's attorney almost invariably concluded that the person being examined was totally disabled.  *See Miles*, 84 F.3d at 1399, 1401.  In *Hendricks*, the court reversed and remanded an adverse decision in part because the administrative law judge's comments at hearing reflected a bias against finding lay witnesses' testimony credible.  *See Hendricks*, 1992 WL 120383, at *8 (administrative law judge told claimant that his judgment would "never swing on the basis of any self-serving affidavits or self-serving testimony from friends, relatives, *et cetera*.") (emphasis omitted).

credibility finding in the instant decision, *see id.* at 546-48.  While the plaintiff points to the administrative law judge's convening of the follow-up June 2004 hearing and "inquisition" as evidence of bias, in my view it cuts the other way.  Consistent with the dictates of minimal due process, the administrative law judge convened a supplemental hearing to afford the plaintiff notice of the parking-lot observations and provide him with an opportunity to be heard regarding them.  *See Gagliardi v. Sullivan*, 513 F.3d 301, 308 (1st Cir. 2008) ("notice and an opportunity to be heard are essential principles of due process") (citation and internal punctuation omitted). The administrative law judge could not have foreseen the nature of the plaintiff's response to his inquiries and was not required to assure that his answers would bolster his case.

Finally, to the extent that the administrative law judge may have factored his parking-lot observations, and/or the plaintiff's denials regarding them, *sub silentio* into his post-remand negative credibility finding, I do not regard such consideration as evidence of actual bias.  The rendering of a negative credibility finding, even one based on observation of a claimant's demeanor and conduct, is not inherently improper or indicative of prejudice against that individual.  *See, e.g., United States v. Ramirez-Chilel*, 289 F.3d 744, 750 n.6 (11th Cir. 2002) ("Making credibility assessments is daily grist for a trial judge.  In any case or proceeding in which the defendant testifies, the judge, almost as a reflex process, will form an opinion about the defendant's credibility.  Such determination should not, of course, be based on bias or prejudice, but prejudice does not inevitably arise as a result of forming a credibility opinion."); *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) ("Kelley's sole claim on appeal is that she was denied a decision 'on the evidence adduced at the hearing,' as required by 42 U.S.C. § 405(b), when the ALJ improperly based his decision that she was not disabled on his 'extra-record' observation that she remained seated in apparent comfort throughout the hour-long

administrative hearing. . . .  Kelley's contention that an ALJ cannot consider his own observations with respect to the claimant's demeanor and credibility at the administrative hearing in reaching his decision because such observations are not 'evidence adduced at the hearing' is without merit.  To the contrary, an ALJ's observations are adduced at the hearing just as the testimony and evidence given before any finder of fact are all part of the case which the trier of fact decides.") (footnote omitted); *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) (The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

In sum, the plaintiff falls short of demonstrating actual bias or prejudice against him on the part of the administrative law judge.  He demonstrates at most the existence of an appearance of impropriety, a situation in which applicable regulations and Hallex provisions permit, but do not require, an administrative law judge to recuse him or herself.  *See, e.g., Bunnell*, 336 F.3d at 1115 ("[A]ctual bias must be shown to disqualify an administrative law judge.").  As counsel for the commissioner contended at oral argument, even assuming *arguendo* that the administrative law judge erred or abused his discretion in declining to recuse himself based on an appearance of impropriety, or in taking into consideration the parking-lot observations or the plaintiff's denials regarding them, the circumstances betray any such error to have been harmless.  In both adverse decisions, the administrative law judge supplied compelling reasons, apart from those observations and denials, for discrediting the plaintiff's allegations concerning the magnitude of his disability.  *See* Record at 17-18, 21, 546-48.  These included:

1.     A May 28, 2007, report by a DDS examining consultant that the plaintiff's performance on symptom-validity tests raised suspicion of malingering.  *See id*. at 763.

2.     The plaintiff's repeated failure to keep physical therapy appointments despite the apparent efficacy of that form of treatment in reducing his pain, suggesting that his symptoms were not as severe as alleged.  *See, e.g., id.* at 714, 717, 720-24, 732, 744.

3.     Indications in treating sources' notes that the plaintiff was not only working but also sometimes engaging in strenuous physical activity after January 31, 2002, the date that he testified he stopped working.  *See, e.g., id.* at 321 (plaintiff noted to have "overworked trawling a pool" in March 2002), 376 (plaintiff noted in May 2002 to be seeking stronger pain medication so that he could continue installing pools), 371 (plaintiff noted in June 2002 to have exacerbated his back pain after digging swimming pools six days earlier), 692, 696 (plaintiff noted to be complaining of increased back pain in March and June 2006 after moving his possessions from one house to another).

Any error accordingly was harmless.  *See Hyde v. Barnhart*, 132 Fed. Appx. 161, 163 (9th Cir. 2005) ("Unlike other cases where we have concluded that an ALJ erred by relying on evidence outside the record, in the instant case, substantial evidence in the record supports the ALJ's decision that Plaintiff is not disabled.  Consequently, the ALJ's consideration of any extra-record evidence was incidental to his decision, and any error was harmless.") (citations omitted); *Nelson v. Apfel*, 131 F.3d 1228, 1236-37 (7th Cir. 1997) ("We agree with the district court that it was improper for the ALJ to consider evidence outside the record [the claimant's conduct at his sister's disability hearing] in determining the extent of Justin's disability.  We also agree with the district court that this error was harmless, however.  The ALJ's consideration of this extra-record evidence was incidental to his decision.") (citation omitted).

### B.  Adoption of DDS RFC Opinions

The plaintiff next assails the administrative law judge's decision to afford significant weight to the assertedly cursory and outdated RFC opinions of two DDS non-examining consultants, Richard Chamberlin, M.D., and Robert Hayes, D.O., deeming the plaintiff capable of light work, while rejecting the RFC opinions of several treating medical sources deeming him disabled or capable of less than sedentary level work.  *See* Statement of Errors at 9-26.  I find no error.

Neither Dr. Hayes nor Dr. Chamberlin had the benefit of review of the full record in this case.  Dr. Chamberlin's opinion is dated June 18, 2003, *see* Record at 430-37, and Dr. Hayes' opinion is dated July 24, 2003, *see id*. at 459-67.  Medical records subsequently were submitted spanning the period to September 2007.  *See, e.g., id*. at 767.  Nonetheless, as counsel for the commissioner pointed out at oral argument, with respect to the plaintiff's SSD application, there is no staleness issue.  The plaintiff had acquired sufficient quarters of coverage to remain insured for SSD purposes only through March 31, 2002, *see* Finding 1, *id*. at 543, and hence had to prove that he was disabled on or before that date.  It is a separate question whether, for purposes of the plaintiff's SSI application, which implicated his status through the date of the administrative law judge's decision, *see* Finding 11, *id*. at 549, the DDS opinions were stale.

It can indeed be reversible error for an administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record.  *See, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert.  In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone

constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

Nonetheless, after careful review of the voluminous record in this case, I am satisfied that, for purposes of SSI, the records unseen by Drs. Hayes and Chamberlin either were cumulative of the records that they did see or, on the whole, reflected improvement in the plaintiff's condition and functionality after he was placed on methadone in 2004. *See, e.g.*, Record at 477 (report of MRI dated September 11, 2003, indicating lower back stable since January 23, 2003, MRI), 491 (statement of G.T. (Tom) Caldwell, M.D., dated February 9, 2004, that Dr. Caldwell did not know the plaintiff's current status because he had not returned for follow-up in wake of performance of procedure meant to give long-lasting benefit for chronic back pain, but "in general my belief is that people with chronic low back pain can work in some capacity, either a full or part-time basis[,]" although Dr. Caldwell was "not sure [the plaintiff] agree[d] with that"), 718 (note of October 3, 2005, indicating that the plaintiff was walking everywhere because his vehicle was not operable, causing increased back pain), 722 (note of July 21, 2006, indicating that the plaintiff's back symptoms were well-controlled with methadone, which he had been taking for two and a half years; the pain had been exacerbated a month and a half ago, but only bothered him first thing in the morning), 740-41 (note of consultation on October 12, 2004, indicating that methadone was working much better for the plaintiff than other medications he had tried, that he was rating his pain generally as a two on a scale of one to 10, and that he was taking a home real estate brokerage course); 743 (report of MRI dated September 9, 2004, indicating lower back stable compared with September 11, 2003, MRI), 752 (note of April 18, 2005, indicating that plaintiff had begun evening walks, which were helping his pain

considerably), 769 (note of September 13, 2007, indicating no abnormal findings on examination of lower back and stable back pain).[6]

In such circumstances, it is not error for an administrative law judge to rely on the opinion of a DDS non-examining consultant who has not had the benefit of review of the full record.  *See, e.g., Freese v. Barnhart*, No. 03-286-P-S, 2004 WL 1920702, at *4 (D. Me. Aug. 26, 2004) (rec. dec., *aff'd* Sept. 24, 2004) ("[T]he critical question, in my view, is whether the Martin's Point records are merely cumulative (and thus their absence from the palette of evidence presented to [the DDS non-examining consultant] harmless).").

To the extent that the plaintiff asserts that the weight to which the Hayes and Chamberlin opinions were entitled was lessened by virtue of their not having seen later submitted opinions by treating sources indicating that the plaintiff had only a sedentary or sub-sedentary work capacity, *see* Statement of Errors at 24-25, I disagree.  For reasons discussed below, the administrative law judge properly refused to credit those opinions.  It is unlikely that reviewing them would have swayed either Dr. Hayes or Dr. Chamberlin to alter his RFC opinion.

The plaintiff also challenges the administrative law judge's reliance on the Hayes and Chamberlin reports in view of their asserted cursoriness.  *See id.* at 25-26.  To the extent that he relies on Social Security Rulings 96-6p and 96-8p to argue that the DDS consultants did not meet narrative discussion requirements, *see id.* at 25, his reliance is misplaced.  Those rulings address requirements of adjudicators, not consultants.  *See* Social Security Ruling 96-6p, reprinted in

---

[6] A treating physician, Bert I. Beverly, M.D., provided the plaintiff with a wheelchair in approximately March 2004.  *See* Record at 505.  Dr. Beverly noted that the plaintiff returned to his office in the wheelchair on April 14, 2004.  *See id.* at 504.  I find no other indications in treatment notes that the plaintiff was viewed in a wheelchair.  The plaintiff reported to a physical therapist in January 2005 that he was in a wheelchair from May to September 2004, when he was given new medication to control his pain that helped him to move functionally.  *See id.* at 737.  By October 12, 2004, he was noted during a consultation with Maine Spine & Rehabilitation to be improved on methadone.  *See id.*  at 740.  The plaintiff did report flare-ups of back pain subsequent to commencing methadone, for example, on June 28, 2005, after some of his medications purportedly were stolen and he had to wait to renew them, *see id.* at 745, and on July 17, 2006, after engaging in the strenuous activity of packing and moving boxes, *see id.* at 687.  However, on the whole, his functionality improved.

*West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-6p"), at 129-32; Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-8p"), at 143-51.  In any event, Drs. Hayes' and Chamberlin's notes reflect thorough review of the record as it then existed and due consideration both of the plaintiff's well-documented back problems and his credibility issues.  *See* Record at 430-37, 459-67.  The plaintiff faults Dr. Chamberlin for including, among four instances raising credibility concerns, two that predated the alleged onset date of disability, and for failing to obtain explication for the two instances post-dating the alleged onset date of disability.  *See* Statement of Errors at 26.  Even if one sets aside the two earlier incidents, the fact that the plaintiff was noted by treating sources to have aggravated his back pain digging swimming pools in June 2002 and building a house in December 2002 sufficed to call into question his allegations of disabling restriction commencing in January 2002.  *See* Record at 432.  The plaintiff cites no authority for the proposition that Dr. Chamberlin, in his capacity as non-examining expert reviewer, was required to afford the plaintiff the chance to explain the patent discrepancy, *see* Statement of Errors at 26, and I know of none.

The plaintiff further criticizes Dr. Chamberlin for failing to analyze why he rejected three RFC opinions of a treating source, Dr. Caldwell.  *See id*. at 25-26.  However, to the extent Dr. Caldwell stated or implied in one or more of those opinions that the plaintiff was capable of less than a sedentary level of exertion, Dr. Chamberlin explained that it was "not reasonable to accept an opinion of 'not even sedentary'" because of "the credibility issue[.]"  Record at 436.

The plaintiff finally suggests that the administrative law judge erred in according the Chamberlin and Hayes RFC opinions significant weight because of the nature of the underlying illness, essentially chronic pain, which he posits "translates poorly to a written record but can be

17

quite obvious to an experienced examining physician (and particularly to a pain specialist)." Statement of Errors at 26. He cites no authority for this proposition, and I do not find it self-evident. I perceive no reason why an experienced DDS non-examining reviewer could not make an effective evaluation of the impact of back pain on functional work capacity, taking into consideration objective indicia such as MRI results and findings on physical examination, a claimant's subjective complaints, and indications in the record of the claimant's level of functioning.

### C. Rejection of Treating Source RFC Opinions

The plaintiff finally argues that the administrative law judge erred in omitting to provide good reasons for rejecting the RFC opinions of two treating sources, Dr. Caldwell and Julie Phelps, M.D. *See id*. at 26-28. This contention is without merit.

While an administrative law judge is free to decline to adopt an RFC opinion of a treating source, he or she must supply "good reasons" for doing so. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); SSR 96-8p at 150 (an administrative law judge can reject a treating-source opinion as to RFC but "must explain why the opinion was not adopted").

The administrative law judge explained:

As for the opinion evidence, Dr. Caldwell stated in October 2002 that he believed that the claimant's work capacity was limited, but that he was not disabled (Exhibit 19F). In March 2003, however, Dr. Caldwell stated that the claimant had no significant work capacity, an opinion which he reiterated in September 2003

18

(Exhibit 27F).  Dr. Phelps indicated in December 2006 that the claimant could not do even a restricted range of sedentary work for eight hours a day (Exhibit 29F).  The undersigned does not accord controlling weight to these treating source opinions because they are not supported by substantial medical evidence, including the records received from these sources.  As discussed above, neither Dr. Caldwell's nor Dr. Phelps's records document clinical findings of disabling severity.  Furthermore, Dr. Caldwell indicated in March 2003 that his assessment of the claimant's limitations was "based on (the claimant's) account of his symptoms and his present functional activity."  In February 2004, Dr. Caldwell indicated that he felt most people with the claimant's back problem had some work capacity, but doubted that the claimant would agree, again implying that the claimant's limitations were self-assessed.

*Id*. at 548.  These constitute good reasons for rejecting the Caldwell and Phelps opinions, and they are supported by substantial record evidence.

Dr. Phelps' records indicate stability and/or improvement in the plaintiff's condition. *See, e.g., id*. at 685 (note of August 23, 2006, reflecting improvement in low back pain and progress with physical therapy, although plaintiff had missed most recent two sessions), 687 (note of July 17, 2006, finding plaintiff's chronic back pain reasonably stable and assessing acute right lower back pain experienced in wake of packing and moving boxes as likely a muscle spasm), 699 (note of February 14, 2006, indicating plaintiff doing fairly well with back pain despite decrease in medication dosage), 701 (note of January 4, 2006, indicating plaintiff tolerated decrease in methadone dosage well and had ridden his bike to office that day), 769 (note of September 13, 2007, indicating back pain stable).

While Dr. Caldwell found, as a result of electrodiagnostic testing performed in July 2002, that the plaintiff had right S1 radiculopathy consistent with his symptoms, he described it as "not severe but it is definitely present[.]"  *Id*. at 353.  Dr. Caldwell offered shifting assessments of the plaintiff's work capacity, declining in October 2002 to "disable" him because he felt that "he ha[d] some work capacity[,]" albeit "a bit limited given his level of pain[,]" *id*. at 340-41, stating in January 2003 that the plaintiff "basically ha[d] a sedentary work capacity[,]" *id*. at 334, stating

19

in March 2003 that the plaintiff had no work capacity, while indicating that opinion stemmed from the plaintiff's self-report, *see id.* at 330 (letter dated March 18, 2003, stating: "At this time, based on [the plaintiff's] account of his symptoms and his present functional activity, I do not think that he has any work capacity.  Based on what he tells me, he can barely care for himself."), stating in September 2003 that the plaintiff's medical condition did "not allow him to engage in gainful employment[,]" *id.* at 498, and stating in February 2004 that he had last seen the plaintiff on October 21, 2003, and could not comment on his present status, but "in general my belief is that people with chronic low back pain can work in some capacity, either a full or part-time basis" although he was not sure that the plaintiff "agree[d] with that[,]" *id.* at 491.

In short, the administrative law judge did all that he was required to do with regard to the Phelps and Caldwell work capacity opinions: assess them and give good reasons for rejecting them.  There was no error.[7]

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

---

[7] As the plaintiff points out, Dr. Webber, a medical expert present at his April 2007 hearing, testified that he would not argue with the limitations imposed by Drs. Caldwell or Phelps and that the plaintiff's RFC was "possibly between light and sedentary, maybe."  Record at 840-41.  However, the administrative law judge was not obliged to embrace Dr. Webber's equivocal testimony.  The plaintiff's characterization of Dr. Webber as stating that he "could not accept Dr. Chamberlin's RFC[,]" Statement of Errors at 25, is not accurate.  Dr. Webber instead testified that it was hard to say whether that RFC opinion was reasonable.  *See* Record at 841.

***Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.***

Dated this 28th day of January, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
